

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

RAYMOND G. FARMER, in his capacity   §
as Liquidator of Consumers' Choice Health   §
Insurance Company, and MICHAEL J.   §
FITZGIBBONS, in his capacity as Special   §
Deputy Liquidator of Consumers' Choice   §
Health Insurance Company,   §
                    Plaintiffs,   §
  §
vs.   §    CIVIL ACTION NO. 3:17-0956-MGL
  §
THE UNITED STATES OF AMERICA,   §
UNITED STATES DEPARTMENT OF   §
HEALTH AND HUMAN SERVICES,   §
CENTERS FOR MEDICARE & MEDICAID   §
SERVICES, ALEX M. AZAR II, in his   §
capacity as Secretary of the United States   §
Department of Health and Human Services,   §
and SEEMA VERMA, in her capacity as   §
Administrator for the Centers for Medicare   §
& Medicaid Services,   §
                    Defendants.   §

**MEMORANDUM OPINION AND ORDER
GRANTING THE GOVERNMENT'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION**

## I.    INTRODUCTION

Plaintiffs Raymond G. Farmer, in his capacity as Liquidator of Consumers' Choice

Health Insurance Company (Consumers' Choice or the Company), a now defunct South Carolina

insurance company, and Michael J. Fitzgibbons, in his capacity as Special Deputy Liquidator of

the Company (collectively, the liquidators), filed this case as a declaratory action in accordance

with 28 U.S.C. 2201. They brought the lawsuit against Defendants the United States of America, the United States Department of Health and Human Services (HHS), the Centers for Medicare & Medicaid Services (CMMS), Alex M. Azar II, in his capacity as Secretary of the HHS, and Seema Verma, in her capacity as Administrator for the CMMS (collectively, the government).

Pending before the Court is the government's motion to dismiss for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), or, in the alternative, for failure to state a claim, Fed. R. Civ. P. 12(b)(6). Having carefully considered the Rule 12(b)(1) portion of the motion, the response, and the reply, the Court will grant the government's motion to dismiss for lack of subject matter jurisdiction. As such, the Court need not reach the parties' arguments as to the government's alternative request to dismiss for failure to state a claim.

## II.     BRIEF FACTUAL AND PROCEDURAL HISTORY

For approximately two years, Consumers' Choice provided health insurance plans on the health insurance marketplaces created by the Patient Protection and Affordable Care Act (the Affordable Care Act or the Act). As is pertinent here, the Act allows for a system of payments by the government, which serve to minimize the risk to insurance companies of furnishing insurance to persons who were previously without insurance and have unknown health risks.

In March 2012, the government and Consumers' Choice closed on a Loan Agreement, which included Promissory Notes for a Start-up Loan to Consumers' Choice in the amount of $18,709,800 and Solvency Loans to the Company in the amount of $68,868,408.

On September 11, 2013, Consumers' Choice and the government entered into an Agreement regarding Consumers' Choice's provision of insurance in calendar year 2014 and the

payment of various amounts between Consumers' Choice and the government. The parties renewed the Agreement on October 28, 2014.

Consumers' Choice eventually failed. The liquidators blame the government's alleged breach of its promise to dispense funding in accordance with the Affordable Care Act for the demise of the Company. The state court ultimately placed the Company into liquidation. According to the liquidators, the government then commenced an array of inappropriate setoffs devised to elevate its priority of payment from the estate of the Company above the claims of others who should possess the higher priority. Consequently, the liquidators claim the government owes them certain amounts of money; and it is disallowed from employing setoffs to cover any purported debts the estate of Consumers' Choice might owe to the government. In the alternative, the liquidators urge, even if setoffs are appropriate, the government can employ them only after the estate of the Company has paid the higher priority claimants.

In the lawsuit, the liquidators ask for a declaration the government's actions are wrongful and enjoined on the bases they are violative of South Carolina law, the terms of the Affordable Care Act, the Loan Agreement, and the January 20, 2017, Presidential Executive Order, which requires the government and its agencies to "exercise all authority and discretion available to them to waive, defer, grant exemptions from, or delay the implementation of any provision or requirement of the Act that would impose a fiscal burden on any State[.]" Executive Order 13765 (Jan. 20, 2017).

After the liquidators filed their amended complaint, the government filed its motion to dismiss for lack of subject matter jurisdiction, or, in the alternative, for failure to state a claim. The liquidators filed their response to the motion, to which the government filed its reply. The

Court, having been fully briefed on all of the relevant issues, is now prepared to adjudicate the government's motion.

## III.    STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co*., 511 U.S. 375, 377 (1994).  More specifically, unless a matter involves an area of a federal court's exclusive jurisdiction, a plaintiff may bring suit in federal court only if the matter involves a federal question arising "under the Constitution, laws or treaties of the United States,"  28 U.S.C. § 1331, or if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states,"  28 U.S.C. § 1332(a)(1).  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377.  Thus, in this action, the burden of proving subject matter jurisdiction exists rests on the liquidators.  *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp*., 166 F.3d 642, 647 (4th Cir. 1999).

A motion to dismiss under Rule 12(b)(1) raises the fundamental question of whether a court is competent to hear and adjudicate claims.  In reviewing a motion to dismiss under Rule 12(b)(1), the Court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991).

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). This includes declaratory judgment actions. *Goldstein v. Moatz*, 364 F.3d 205, 219 (4th Cir. 2004) ("If a declaratory judgment proceeding actually constitutes a suit against the sovereign, it is barred absent a waiver of sovereign immunity."). A suit is against the sovereign if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration." *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (quoting *Land v. Dollar*, 330 U.S. 731, 738 (1947)).

Federal agency heads are likewise immune from suit. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 688 (1949) (In a suit naming a government official in which the Court is asked to prevent or discontinue a wrong, "the suit is barred, not because it is a suit against an officer of the [g]overnment, but because it is, in substance, a suit against the [g]overnment over which the court, in the absence of consent, has no jurisdiction."). "It is not necessary that the United States be denominated as a party." *Portsmouth Redevelopment & Hous. Auth. v. Pierce*, 706 F.2d 471, 473 (4th Cir. 1983). The Court will view a case against a federal agency or official "as an action against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the [g]overnment from acting, or compel it to act.'" *Id.* (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)).

"Sovereign immunity is not a sword, but a shield; and as a shield it means simply that 'the United States cannot be sued at all without the consent of Congress.'" *United States v. Bankers Ins. Co.*, 245 F.3d 315, 320 (4th Cir. 2001) (quoting *Block v. North Dakota*, 461 U.S. 273, 287 (1983)). "[T]he terms of [the United States's] consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586

(1941). Such consent must be "unequivocally expressed in statutory text, and will not be implied." *Lane v. Peña*, 518 U.S. 187, 192 (1996) (internal citations omitted). "[A] waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign." *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999).

Both the Tucker Act, 28 U.S.C. § 1491 & § 1346(a)(2), and the Administrative Procedures Act (APA), 5 U.S.C. § 702, "have been construed as waivers by the United States of sovereign immunity." *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996). The Supreme Court has concluded "by giving the Court of [Federal] Claims jurisdiction over specified types of claims against the United States, the Tucker Act constitutes a waiver of sovereign immunity with respect to those claims." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). And the Supreme Court, in *Bowen v. Massachusetts*, 487 U.S. 879 (1988), recognized "the 1976 amendment to 5 U.S.C. § 702 was intended to broaden the avenues for judicial review of agency action by eliminating the defense of sovereign immunity in cases covered by the amendment.") *Id*. at 891-92 (alteration omitted).

For purposes of this lawsuit, if Tucker Act waiver of sovereign immunity applies, this case must be heard by the Court of Federal Claims. If the government's sovereign immunity is waived under the APA, however, the matter belongs here.

## IV. CONTENTIONS OF THE PARTIES

The government contends this action belongs not in this Court but in the United States Court of Federal Claims. In support of its argument, the government asserts this Court lacks jurisdiction over this matter because the government has refrained from waiving its sovereign immunity against monetary disputes in the district court. Specifically, the government avers the

APA does not waive its sovereign immunity in this Court inasmuch as the Federal Court of Claims provides an adequate remedy for the liquidator's claims. The government also maintains it has failed to waive its sovereign immunity over the liquidators' specific performance claim, and neither the Declaratory Judgment Act, the All Writs Act, nor the South Carolina Liquidation Act give this Court subject matter jurisdiction.

In opposing the government's motion, the liquidators contend their lawsuit should be heard in this Court. One of their avowed reasons is that the government purportedly waived its sovereign immunity in the Loan Agreement between the parties. They also assert the APA provides a waiver of the government's sovereign immunity in this Court because they are not seeking monetary damages. The liquidators argue equitable remedies with a monetary impact do not deprive this Court of jurisdiction under the APA; and the Court of Federal Claims does not provide an adequate remedy for their setoff claims. They rely heavily on the Supreme Court's *Bowen* decision for their APA arguments. The liquidators also contend the Court of Federal Claims lacks jurisdiction over their state law claims; and the government waived sovereign immunity over the liquidators' claim for specific performance.

The liquidators agree with the government's statement neither the Declaratory Judgment Act nor the All Writs Act create subject matter jurisdiction in this Court.

V.      DISCUSSION AND ANALYSIS

Before addressing the parties' contentions, the Court thinks it appropriate to provide some context to the parties' arguments by setting forth a brief overview of the Tucker Act and the jurisdiction of the Court of Federal Claims.

"The Tucker Act . . . consists of two parts: 28 U.S.C. § 1491, and 28 U.S.C. § 1346(a)(2), which is commonly known as the 'Little Tucker Act.'" *Randall*, 95 F.3d at 346. Because this action involves claims in excess of $10,000, the Little Tucker Act is inapplicable here. Consequently, all references to the Tucker Act will be to the Tucker Act described in § 1491, which deals with claims against the United States for more than $10,000.

"The Tucker Act establishes three conditions which, if satisfied, vest subject matter jurisdiction exclusively in the [Court of Federal Claims]. The action must be against the United States, seek monetary relief in excess of $10,000, and be founded upon the Constitution, federal statute, executive regulation, or government contract." *Portsmouth*, 706 F.2d at 473.

It is within "the province of the Court of Federal Claims and the Federal Circuit to decide non-tort actions against the United States." *Randall*, 95 F.3d at 346 (4th Cir. 1996). "[A] primary purpose of the Tucker Act is to ensure that a central judicial body adjudicates most claims against the United States Treasury." *Id*. (citation omitted) (internal quotation marks omitted) (alterations omitted).

With this background in mind, the Court now turns to the parties' specific contentions as to whether the case belongs with this Court or the Court of Federal Claims.

### A.    *Whether the APA waives the government's sovereign immunity*

The government contends the APA fails to waive the government's sovereign immunity in this instance. The Court agrees with this assessment.

The APA provides:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or

employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702. Further, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." *Id*. § 704. Hence, to summarize, absent from the APA waiver of sovereign immunity are all claims: (1) for money damages, *id*. § 702, (2) seeking relief which another statute expressly or impliedly forbids, *id*., or (3) for which an adequate remedy is available elsewhere, *id*. § 704.

The first task for the Court, then, is to determine whether any of these three exceptions are applicable to this matter. Because "[t]he three limitations function in the disjunctive[,] the application of any one is enough to deny a district court jurisdiction under the APA." *Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 480 F.3d 1116, 1126 (Fed. Cir. 2007). Accordingly, inasmuch as the Court's consideration of the "adequate remedy" issue is dispositive, the Court will limit its discussion as to whether the APA waives the government's sovereign immunity to just this one factor. *See Id*. at 1125 ("One reason for beginning the analysis with the 'adequate remedy' issue is that its resolution often will be dispositive. If the suit is at base a claim for money, and the relief available through the Court of Federal Claims under the Tucker Act—a money judgment—will provide an adequate remedy, the inquiry is at

an end. There is no need to address the § 702 'money damages' limitation because § 704 precludes adjudication under the APA.").

"[S]uits under the Tucker Act in the [Court of Federal Claims] offer precisely the sort of 'special and adequate review procedures' that § 704 requires to direct litigation away from the district courts." *Bowen*, 487 U.S. at 901 n.31. "[T]he relief available for [the plaintiff's] claims in the Court of Federal Claims is 'adequate' [if] it can provide, in substance, all of [the plaintiff's] requested relief." *Kanemoto v. Reno*, 41 F.3d 641, 646 (Fed. Cir. 1994).

So, if this suit falls under the Tucker Act, then the Court of Federal Claim provides an adequate remedy, thus barring the Court from having subject matter jurisdiction over the matter. Accordingly, the Court must decide whether this is a Tucker Act action. *Portsmouth* is instructive. In that case, the Fourth Circuit vacated the district court's judgment it had subject matter jurisdiction over the matter and remanded the case to the district court with instructions to transfer the matter to the Court of Federal Claims. *Id* at 475.

As already observed, *Portsmouth* counsels the Court to apply a tripartite test that, if met, means subject matter jurisdiction is vested exclusively in the Court of Federal Claims: "The action must be against the United States, seek monetary relief in excess of $10,000, and be founded upon the Constitution, federal statute, executive regulation, or government contract." *Portsmouth*, 706 F.2d at 473.

Applying those factors to this case: first, there can be no dispute this is a lawsuit against the sovereign. Further, any monetary judgment recovered would come out of the United States treasury. Hence, this is an action against the United States for purposes of the Tucker Act.

Second, the monetary relief sought must be in excess of $10,000. In this lawsuit, like the plaintiff in *Portsmouth*, the liquidators' "primary objective . . . is to recover money allegedly

wrongfully withheld by the federal government." *Portsmouth*, 706 F.2d at 474. "The amount involved far exceeds the jurisdictional prerequisite. Although the [liquidators'] amended complaint phrases its request for money as a request for equitable relief, [Court of Federal Claims'] jurisdiction cannot be avoided by framing an essentially monetary claim in injunctive or declaratory terms." *Id.* (citation omitted).

The liquidators, same as the plaintiff in *Portsmouth*, "contend[ ] that in light of the . . . equitable claims at stake, the [Court of Federal Claims] would be unable to render a complete and effective remedy because it lacks the power to grant injunctive or declaratory relief." *Id*. But, "where a claim primarily seeks monetary relief, it is improper to deny the [Court of Federal Claims] jurisdiction simply because it cannot grant the precise equitable relief sought." *Id*.

"[W]hen the plaintiff's claims, regardless of the form in which the complaint is drafted, are understood to be seeking a monetary reward from the [g]overnment, then . . . a straightforward analysis calls for determining whether the case falls within the jurisdiction of the Court of Federal Claims." *Suburban*, 480 F.3d at 1126. "If that court can provide an adequate remedy—if a money judgment will give the plaintiff essentially the remedy he seeks—then the proper forum for resolution of the dispute is not a district court under the APA but the Court of Federal Claims under the Tucker Act." *Id.* "A party may not circumvent the [Court of Federal Claims'] exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory or mandatory relief where the thrust of the suit is to obtain money from the United States." *Christopher Vill., L.P. v. United States*, 360 F.3d 1319, 1328 (Fed. Cir. 2004) (citation omitted) (internal quotation marks omitted) (alteration omitted). In other words, "[a] party may not avoid the [Court of Federal Claims'] jurisdiction by framing an action against the federal government that appears to seek only equitable relief when the party's real effort is to

obtain [money] damages." *Marshall Leasing, Inc. v. United States*, 893 F.2d 1096, 1099 (9th Cir.1990).

Additionally, 28 U.S.C. § 2508 provides setoff claims such as this belong in the Court of Federal Claims: "Upon the trial of any suit in the United States Court of Federal Claims in which any setoff, counterclaim, claim for damages, or other demand is set up on the part of the United States against any plaintiff making claim against the United States in said court, the court shall hear and determine such claim or demand both for and against the United States and plaintiff." *Id*. And 28 U.S.C. § 1503 states: "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any set-off or demand by the United States against any plaintiff in such court."

The liquidators have packaged their requests for relief in equitable terms: they seek a declaration the government's actions are wrongful and enjoined on the bases they are violative of South Carolina law, the terms of the Affordable Care Act, the terms of the Loan Agreement, and the January 20, 2017, Presidential Executive Order. But, as stated above, the Court must regard substance over form. It looks beyond the packaging of a litigant's claims to determine what it is the party is actually seeking.

Here the liquidators are actually requesting a money judgment from the government. A monetary award will give the liquidators essentially the remedy they seek. And, "any monetary judgment recovered in this case would expend itself on the public treasury." *Portsmouth*, 706 F.2d at 473. "[R]eceiving monetary damages from the public fisc of the United States . . . is the touchstone of Tucker Act jurisdiction." *Brazos*, 144 F.3d at 787.

In the event the liquidators prevail at the Court of Federal Claims, but a money judgment fails to provide all the relief requested by them, there is a mechanism to keep the government

from any further allegedly unlawful acts. As several other courts have held in similar circumstances, the principles of res judicata would apply. *See, e.g.*, *McBride Cotton & Cattle Corp. v. Veneman*, 116 F. App'x 89, 91 (9th Cir. 2004) ("These claims are not expressed as claims for money damages, but we conclude that adequate relief exists in the Court of Federal Claims and that APA jurisdiction is not available. In the event of success, [the plaintiff] could receive a refund of all unauthorized [setoffs] and the [government] would be prohibited from [setting off] further payments under the principle of res judicata."); *Consol. Edison Co. of New York v. U.S., Dep't of Energy*, 247 F.3d 1378, 1385 (Fed. Cir. 2001) (*Con Ed*) (invoking the doctrine of res judicata and stating the "court cannot imagine that the United States would continue to require the [plaintiff] to pay unlawful exactions); *Cathedral Square Partners Ltd. P'ship v. S. Dakota Housing Dev. Auth.*, 679 F. Supp. 2d 1034, 1044 (D.S.D. 2009) (holding although "the Court of Federal Claims does not have the power to grant future payments . . . any such prospective relief will be satisfied by the res judicata effect of a money judgment").

"Furthermore, the Claims Court can issue declaratory relief that is tied to and subordinate to a monetary award. A 1972 amendment to 28 U.S.C. § 1491 endows the [Court of Federal Claims] with limited equitable jurisdiction incidental to its jurisdiction over monetary claims[.]" *Portsmouth*, 706 F.2d at 474 (citations omitted) (internal quotation marks omitted).

Third, the lawsuit must "be founded upon the Constitution, federal statute, executive regulation, or government contract." *Id*. Here, the liquidators' claims are based on federal statutes, an executive order, and a government contract. So, this condition is likewise met.

Consequently, this action satisfies the three conditions that vest subject matter jurisdiction exclusively in the Court of Federal Claims.

### B.    Whether *Bowen* compels a different result

Nevertheless, the liquidators stress *Bowen* supports their position the APA gives the Court jurisdiction over this matter.  The Court, however, rejects their stained interpretation of *Bowen*.

"The principal question presented [in *Bowen*] is whether a federal district court has jurisdiction to review a final order of the Secretary of Health and Human Services refusing to reimburse a State for a category of expenditures under its Medicaid program."  *Bowen*, 487 U.S. at 882.  The Supreme Court held the district court had subject matter jurisdiction over the suit.  *Id*. at 912.

The plaintiff, Massachusetts, sought prospective relief, which was "important to the Commonwealth both because the . . . program [at issue] [was] still active and because the legal issues involved [had] ramifications that affect[ed] other aspects of the Medicaid program. What [was] at stake . . . [was] the scope of the Medicaid program, not just how many dollars Massachusetts should have received in any particular year."  *Id* at 889–90.  Thus, the Supreme Court held the Court of Federal Claims was unable to provide an adequate remedy.  *Id*. at 904.

*Bowen*, however, "does not enunciate a broad rule that the [Court of Federal Claims] cannot supply an adequate remedy in any case seeking injunctive relief."  *Con Ed*, 247 F.3d at 1383.  Instead, "*Bowen* turned on the complexity of the continuous relationship between the federal and state governments administering the Medicaid program, and the Court linked its judgment to a specific set of circumstances that are not present in most cases."  *Suburban*, 480 F.3d at 1127 (citations omitted) (internal quotation marks omitted).

> These circumstances include: *Bowen* was a dispute between two sovereigns—a state government and the federal government—implicating federalism issues; the dispute centered

on the administration of a major federal grant, the Medicaid program, involving enormous sums of money and complex interactions between the governments and the beneficiaries; at issue were the institutional arrangements between these two governments; the governments were locked into a fabric of long-term administration of the program; and the money involved in the uncovered education services was a small fraction of the total reimbursement the state received each year for its Medicaid costs under the program. In addition, the Court's focus was on the statutory requirements set forth in this complex grant program—nowhere in *Bowen* did the Court make reference to the existence of any specific contract or express agreement defining the relationship between the parties.

*Id*.

The differences between *Bowen* and this case are many. Here are a few: unlike *Bowen*, neither *Suburban* nor this case "involve[s] a complex, ongoing relationship between plaintiff and the [g]overnment in which the plaintiff seeks declaratory or injunctive relief to modify the [g]overnment's future obligations under the program." *Suburban*, 480 F.3d at 1127. Nor does it "seek to change any long-term future conduct by the [g]overnment." *Id*.

*Con Ed* is also helpful in properly limning *Bowen*. *Con Ed* involves a plaintiff, a utility company, which brought suit in the district court against the federal government challenging the constitutionality of assessment provisions of the Energy Policy Act, and seeking declaratory and injunctive relief. *Con Ed*, 247 F.3d at 1381. The district court denied the government's motion to transfer the case to the Court of Federal Claims or, in the alternative, to dismiss the lawsuit, on the basis of its sovereign immunity. *Id*. The government appealed. *Id*. at 1382. The Court of Appeals for the Federal Circuit held the district court lacked subject matter jurisdiction inasmuch as the Court of Federal Claims could provide an adequate remedy. *Id*. at 1386.

Distinguishing the facts of the *Con Ed* case with *Bowen*, the court stated "the Supreme Court's ruling in *Bowen* emphasized the complexity of the continuous relationship between the

federal and state governments administering the Medicaid program." *Id.* at 1383. "The Supreme Court was 'not willing to assume, categorically, that a naked money judgment against the United States will always be an adequate substitute for prospective relief fashioned in the light of the rather complex ongoing relationship between the parties.'" *Id.* (quoting *Bowen*, 487 U.S. at 905). The *Con Ed* court noted: "The Supreme Court's choice of absolute language such as 'categorically' and 'always' leaves room for the proposition that the Court of Federal Claims may well supply an adequate remedy in cases without a complex ongoing federal-state interface." *Id.* (citation omitted). "Unlike the Medicaid program with its shifting populations and demographics, advancing medical technologies, unforeseeable health threats, and varying state and federal economic conditions, the relationship between [the plaintiff] and the United States features a known and fixed series of payments over time." *Id.* 1383-84.

The facts of this case more closely mirror the ones set forth in *Suburban* and *Con Ed* than they do *Bowen*. Although the Affordable Care Act statutory scheme may be complicated, the relationship between the estate of Consumers' Choice and the government, or the liquidators and the government, is not. For instance, there is no complex, ongoing relationship between the parties. Nor is there any long-term future conduct by the government for the Court to manage. Thus, because an adequate remedy is available under the Tucker Act in the Court of Federal Claims, the APA fails waive the government's sovereign immunity such that the case can go forward in this Court. Nothing in *Bowen* convinces the Court otherwise.

### C. Whether the government waived its sovereign immunity regarding the liquidators' specific performance claim

The government urges the Court to dismiss the liquidator's cause of action seeking specific performance of the Loan Agreement because, according to it, the APA does not waive sovereign immunity for the remedy of specific performance of a contract. The Court agrees.

The liquidators fail to dispute the government's contention the APA fails to waive its sovereign immunity as to the liquidators' specific performance claim. Instead, they rely on their argument the government waived its sovereign immunity in the Loan Agreement. But, as discussed below, the Court rejects that argument. As such, it holds the government did not waive its sovereign immunity over the liquidator's specific performance claim.

### D. Whether the Declaratory Judgment Act, the All Writs Act, or the South Carolina Liquidation Act create subject matter jurisdiction in this Court

Both parties agree neither the Declaratory Judgment Act nor the All Writs Act gives this Court subject matter jurisdiction over this lawsuit. The Court agrees. Hence, the Court refrains from offering any discussion on this issue.

The government also asserts the South Carolina Liquidation Act fails to provide subject matter jurisdiction. The liquidators neglect to address this argument, thus any contention to the contrary is waived. *See Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 n.* (4th Cir. 2014) (noting that failure to present legal arguments waives the argument).

### E. Whether the government waived its sovereign immunity in the Loan Agreement

According to the liquidators, the government waived its sovereign immunity in the Loan Agreement. This argument is wanting.

In today's decision, the Court continues down the path its precedents have marked: "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in

statutory text[.]" *Lane*, 518 U.S. at 192. "[T]he unequivocal expression of elimination of sovereign immunity that we insist upon is an expression in statutory text." *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 37 (1992) (internal quotation marks omitted).

The liquidators strive mightily to overcome this Supreme Court authority, but the materials they cite in support of their argument on this issue are wide of the mark. None are contrary to the notion the federal government is unable to waive its sovereign immunity except by an act of Congress.

The AMJUR article stating "[a] waiver of sovereign immunity can take a contractual form[,] 77 Am. Jur. 2d United States § 67, relies on a case in which the district court determined the defendant government agency had "consented to joinder to a foreclosure action, but . . . not consented to the declaratory relief [the plaintiff] seeks." *Wells Fargo Bank, Nat. Ass'n v. Se. New Mexico Affordable Hous. Corp.*, 877 F. Supp. 2d 1115, 1141 (D.N.M. 2012). In that case, a congressional statute allowed for a waiver of the government's sovereign immunity as to joinder in a foreclosure action. *See* 28 U.S.C.A. § 2410 ("[T]he United States may be named a party in any civil action or suit in any district court . . . to foreclose a mortgage[.]"). Of course, that is not we have here.

*C & L Enters. v. Citizen Band Potawatomi Indian Tribe of Okla*, 532 U.S. 411 (2011), and *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656 (7th Cir. 1996), are concerned with tribal immunity, not the government's sovereign immunity. The import of that distinction is this: unlike the government's sovereign immunity, an Indian tribe is subject to suit in two situations: when "[1] Congress has authorized the suit or [2] the tribe has waived its immunity." *Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998). For the tribe to waive its immunity in this context means it must affirmatively relinquish its

18

immunity, and that relinquishment must be clear. *Oklahoma Tax Com'n v. Citizen Band Potawatomi Tribe of Okla.*, 498 U.S. 505, 509 (1991). The government, however, is subject to suit only when "Congress has authorized the suit[,]" *id.*, which "must be unequivocally expressed in statutory text[.]" *Lane*, 518 U.S. at 192. *C & L Enters.* and *Sokaogon Gaming Enter. Corp* are also dissimilar to this lawsuit inasmuch as they relate to whether an arbitration clause agreed to by the tribes is enforceable.

*Hardie v. United States*, 367 F.3d 1288 (Fed. Cir. 2004) and *Bankers*, 245 F.3d 315, unlike this action, deal with the construction of arbitration agreements. Further, *Bankers* is a suit in which the government is the plaintiff so the question of whether the government had waived sovereign immunity is inapplicable.

*Woolf v. Bowles*, 57 F.3d 407 (4th Cir. 1995) concerns the government's payment of interest, which has no relevance here. And finally, the court in *State v. Sorenson*, 436 N.W.2d 358 (Iowa 1989) discusses a state's sovereign immunity, not the federal government's sovereign immunity.

Thus, for all these reasons, the Court rejects the liquidators' claim the government waived its sovereign immunity such that this Court has jurisdiction over this dispute.

### F.   Whether the Court of Federal Claims lacks jurisdiction over claims arising under state law

According to the liquidators, the Court of Federal Claims lacks jurisdiction over its claims arising under state law. This contention unravels under close inspection.

In support of their argument, the liquidators contend the Court of Federal Claims is unable to exercise supplemental jurisdiction over its state claims in accordance with 28 U.S.C. § 1367. They are correct in this assertion. *See Proxtronics Dosimetry, LLC v. United States*,

128 Fed. Cl. 656, 669 n.9 (2016) ("28 U.S.C. § 1367(a) applies only to district courts[.]").  Yet, the discussion does not end there.

"Although § 1367 only applies specifically to federal district courts, the concept of pendent jurisdiction . . . is more broadly applicable." *Trek Leasing, Inc. v. United States*, 62 Fed. Cl. 673, 678 (2004); *see Liberty Ammunition, Inc. v. United States*, 101 Fed. Cl. 581, 589–92 (2011) (discussing extensively the Court of Federal Claims' ability to use pendent jurisdiction). "Pendent jurisdiction may be assumed . . . at the Court's discretion in the interests of judicial economy, convenience, and fairness." *Kennedy v. United States*, 19 Cl. Ct. 69, 76 (1989).  The Court of Federal Claims "has traditionally interpreted many different state laws in the course of making its decisions in a variety of areas, including: environmental and public nuisance laws; intestacy laws; property law; and contract law[.]" *Trek*, 62 Fed. Cl. at 678 (citations omitted).

Consequently, the Court of Federal Claims is able to adjudicate any state claims by the liquidators' via pendant jurisdiction.  To the extent the Court of Federal Claims needs to apply South Carolina's priority scheme, it is able to do that, too.  *See Greene v. United States*, 440 F.3d 1304 (Fed. Cir. 2006) (reviewing the Court of Federal Claims' application of a state priority statute).

## VI.    CONCLUSION

In light of the foregoing discussion, the government's motion to dismiss for lack of jurisdiction is **GRANTED**.

**IT IS SO ORDERED.**

Signed this 16th day of March, 2018, in Columbia, South Carolina.

s/ Mary Geiger Lewis<br>
MARY GEIGER LEWIS<br>
UNITED STATES DISTRICT JUDGE
